UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDITH PHILLIPS,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

Case No. 2:20-cv-11792
District Judge Victoria A. Roberts
Magistrate Judge Kimberly G. Altman

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

I.     Introduction

This is a social security case.  Plaintiff Edith Phillips (Phillips) brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB), Supplemental Security Income (SSI), and Disabled Widow's Benefits (DWB) under the Social Security Act (the Act).  Both parties have filed summary judgment motions (ECF Nos. 11, 12), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

1

For the reasons set forth below, substantial evidence supports the Administrative Law Judge's (ALJ) conclusion that Phillips is not disabled under the Act.  Accordingly, it is RECOMMENDED that the Commissioner's Motion for Summary Judgment (ECF No. 12) be GRANTED, Phillips' Motion for Summary Judgment (ECF No. 11) be DENIED, and the ALJ's decision be AFFIRMED.

## II.     Background

### A.     Procedural History

Phillips was 50 years old at the time of her alleged onset date of September 22, 2017.  (ECF No. 9, PageID.123).  She previously worked as a sandwich artist and a food preparer.  (*Id*., PageID.303).  Phillips alleged disability due to seizures, hypokalemia,[1] HCL, ulcer, fibromyalgia, and anxiety.  (*Id*., PageID.123-124).

After Phillips' applications were denied at the initial level on January 25, 2018.  (*Id*., PageID.123-157), she timely requested an administrative hearing, which was held on May 28, 2019, before the ALJ.  (*Id*., PageID.104-121).  Phillips testified at the hearing, as did a vocational expert (VE).  (*Id*.).

---

[1] "Low potassium (hypokalemia) refers to a lower than normal potassium level in your bloodstream.  Potassium helps carry electrical signals to cells in your body.  It is critical to the proper functioning of nerve and muscles cells, particularly heart muscle cells."  mayoclinic.org/symptoms/low-potassium/basics/definition/sym-20050632#:~:text=Low%20potassium%20(hypokalemia)%20refers%20to,cells%2C%20particularly%20heart%20muscle%20cells (Last visited January 24, 2022)>

Phillips testified that she had a high school education.  (*Id.*, PageID.107). Most recently, she had worked as a sandwich artist for Subway.  (*Id.*, PageID.108). She alleged disability because of fibromyalgia, a seizure condition, a mental impairment, and pain in the lower back, mid back, neck, hips, and head.  (*Id.*, PageID.108-109).

The worst pain was located in her neck, which "hurt[] constantly."  (*Id.*, PageID.109).  Phillips had difficulty moving her neck.  (*Id.*, PageID.109-110). Phillips' lower back also "hurt[] all the time."  (*Id.*, PageID.110).  She had difficulty bending, twisting, pushing, pulling, and lifting more than five pounds. (*Id.*).  Phillips could stand for about 20 minutes without having problems.  (*Id.*, PageID.113).  She could also sit for about 20 minutes without having problems. (*Id.*).

Phillips suffered from a seizure disorder, and her most recent seizure occurred approximately a month and a half before the hearing date.  (*Id.*, PageID.111).  Warning signs for a seizure included disorientation and lightheadedness.  (*Id.*).  Besides the seizure a month and a half before the hearing, Phillips' most recent seizure had occurred about a year earlier.  (*Id.*).  Phillips took medications to prevent seizures.  (*Id.*).  The recent seizure occurred when Phillips was not in compliance with her medications.  (*Id.*, PageID.111-112).  Phillips indicated that she had insurance issues.  (*Id.*).

3

The medications made Phillips tired, and she spent approximately four or five hours a day laying down. (*Id.*, PageID.113-114). Phillips stopped driving after her most recent seizure. (*Id.*, PageID.114). She also did not drink alcohol because of possible interactions with her medications. (*Id.*, PageID.115-116).

On June 19, 2019, the ALJ issued a written decision finding that Phillips was not disabled. (*Id.*, PageID.86-99). On April 27, 2020, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (*Id.*, PageID.39-44). Phillips timely filed for judicial review of the final decision. (ECF No. 1).

B.     Medical Evidence

Records from Phillips' primary care physician Michael Kasztelan, M.D., indicate that Phillips was regularly seen for medications refill appointments between October 14, 2016, and September 27, 2017. (ECF No. 9, PageID.396-409).

Phillips was admitted to Henry Ford Macomb Hospital on September 22, 2017, after having a seizure at work. (*Id.*, PageID.366). She had an additional seizure in the emergency room. (*Id.*, PageID.372). She was discharged on September 24, 2017. (*Id.*, PageID.366). She denied any prior seizures. (*Id.*). Phillips was taking Adderall for attention-deficit/hyperactivity disorder (ADHD)

4

and Norco for pain cause by fibromyalgia; back and muscle pain; and pain of the knees, and legs.  (*Id*., PageID.366, 369).

Sumul Modi, M.D., a vascular neurologist, recommended starting Phillips on Trileptal to prevent further seizures.  (*Id*., PageID.376).  He further recommended that she follow up with Dr. Tracey Morson, M.D. in clinic and avoid driving for six months.  (*Id*.).

Dr. Kasztelan's September 27, 2017 post-hospitalization treating records note prescriptions for Adderall, Amoxicillin, Norco, Oxcarbazepine, and Xanax.  (*Id.*, PageID.408).  Dr. Kasztelan noted that Phillips' hospital "workup fortunately did not show any significant central nervous system structural abnormality."  (*Id*., PageID.409).  He further noted that she had not had any seizures since her hospitalization.  (*Id*.).  Dr. Kasztelan recommended discontinuing Adderall until Phillips was cleared by neurology.  (*Id*., PageID.410).

On January 13, 2018, Phillips was examined for the Social Security Administration (SSA) by Indigo Y. Brown, D.O.  (*Id*., PageID.414-416).  In addition to the seizures related to her September 2017 hospitalization, Phillips reported having a seizure approximately a week and a half before Dr. Brown's examination.  (*Id*.).  Dr. Brown's conclusion was as follows:

> This is a 50 year old woman with a history of seizures, fibromyalgia, anxiety, stomach ulcer, hypokalemia.  [Phillips] was able to complete all tasks asked of her without difficulty.  She had no difficulty getting on and off the exam table, heel and toe walking or squatting.  She had

5

a normal neurological exam.  She had no problems with decreased digital dexterity.  There were several fibromyalgia tender points.  Heart and lung exams were normal.

(*Id.*, PageID.416).

Phillips was admitted to Henry Ford Macomb Hospital from March 4, 2019 through March 6, 2019 because she experienced a seizure.  (*Id.*, PageID.429-435, 462-483).  During her hospital stay, she was instructed to begin taking Cyanocobalamin, folic acid, and thiamine.  (*Id.*, PageID.429).  She was told to change how much Oxcarbazepine she took and to stop taking Hydrocodone-acetaminophen.  (*Id.*).  It was noted that the "seizure [was] likely due to the effect of [her] stopping [her] medication."  (*Id.*, PageID.434).

A March 4, 2019 MRI without contrast of Phillips' thoracic spine showed: "No acute compression deformity.  Chronic mild compression deformity of T11.  Thoracic spondylosis without significant spinal canal or neural foraminal stenosis."  (*Id.*, PageID.420-421).  Meanwhile, an MRI of the lumbar spine without contrast performed on the same date showed: "Multilevel spondylotic changes of the lumbar spine most severe at L5-S1 with impingement of the bilateral exiting L5 nerves.  Grade 1 retrolisthesis of L5 on S1."  (*Id.*, PageID.425-426).  Finally, a CT angiography of the head and neck with IV contrast performed on the same date showed "[n]o acute intracranial abnormality" and was, overall, an "[u]nremarkable CT angiography of the head and neck."  (*Id.*, PageID.422-423).

A March 6, 2019 MRI without contrast of the cervical spine showed: "Cervical spondylosis with foraminal stenoses as above.  Impingement of the left C6 and C7 nerve roots."  (*Id.*, PageID.427-428).

On March 11, 2019, Phillips was seen by Paula Pretty, FNP-C.  (*Id.*, PageID.437).  Phillips' diagnoses were generalized epilepsy, spondylosis of the cervical region, radiculopathy of the cervical region, spinal stenosis of the lumbar region, hypokalemia, vitamin B12 deficiency anemia, and hypomagnesemia.  (*Id.*).  Pretty prescribed B-12 and Tramadol as well as a quad cane to be used while walking.  (*Id.*, PageID.437).  Pretty instructed Phillips to continue taking Oxcarbazepine, folic acid, and vitamin B-1.  (*Id.*).

On March 12, 2019, Phillips had an appointment with Dr. Morson.  (*Id.*, PageID.439).  Dr. Morson instructed Phillips to take 300 mg of Oxcarbazepine twice a day to treat her seizure disorder.  (*Id.*).  She also recommended that Phillips try medications other than Xanax and Norco and recommended against Phillips starting Tramadol because "it lowers the seizure threshold."  (*Id.*).  Dr. Morson noted that Phillips "was not complaint with the use of medications" proceeding her most recent seizure."  (*Id.*, PageID.351).  Dr. Morson told Phillips to follow up in three months.  (*Id.*).

On April 1, 2019, Phillips was seen by Colleen M. Scott, D.O. for a physical examination.  (*Id.*, PageID.552-554).  Phillips inquired about the completion of a

functional capacity form. (*Id.*, PageID.552). She reported that she was " 'in pain all of the time.' " (*Id.*). Phillips also reported, however, that she had never seen a pain specialist or neurosurgeon for her back pain. (*Id.*). Additionally, Phillips complained of abdominal pain and incessant burping. (*Id.*). Dr. Scott decline to complete the functional capacity form because Phillips was a new patient and her issues had yet to be fully evaluated. (*Id.*, PageID.554). Dr. Scott instructed Phillips to make an appointment with Michigan Spine and Neck. (*Id.*).

III.    Framework for Disability Determinations (the Five Steps)

Under the Act, DIB is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

8

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D. Mich. Oct. 31, 2008), citing 20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps. . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Phillips was not disabled under the Act.  At Step One, the ALJ found that Phillips had not engaged in substantial gainful activity since September 22, 2017 (alleged onset date).  (ECF No. 9, PageID.92).  At Step Two, the ALJ found that she had the

severe impairments of epilepsy, fibromyalgia, and spondylosis of the lumbar and cervical spines. (*Id.*). At Step Three, the ALJ found that Phillips' impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. (*Id.*, PageID.93-94).

The ALJ then assessed Phillips' RFC, concluding that she was capable of performing "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes or scaffolds. She can frequently balance, and can occasionally stoop, bend, crouch, and crawl. She must avoid all exposure to workplace hazards." (*Id.*, PageID.94).

At Step Four, the ALJ found that Phillips was capable of performing her past relevant work as a sandwich maker as the job is performed in the national economy. (*Id.*, PageID.97). Citing the VE's testimony, the ALJ made an alternative Step Five finding that Phillips could perform the work of a housekeeper (150,000 jobs nationally), assembler (100,000 jobs nationally), and packager (100,000 jobs nationally). (*Id.*, PageID.98). As a result, the ALJ concluded that Phillips was not disabled under the Act. (*Id.*, PageID.98).

## IV.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision under 42 U.S.C. § 405(g). Although the court can examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec. of Health*

10

& *Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial

review is constrained to deciding whether the ALJ applied the proper legal

standards in making his or her decision, and whether the record contains

substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775

F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts

of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*,

880 F.3d 778, 783 (6th Cir. 2017) (same).

An ALJ's factual findings must be supported by "substantial evidence."  42

U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence
> to support the agency's factual determinations.  And whatever the
> meaning of substantial in other contexts, the threshold for such
> evidentiary sufficiency is not high.  Substantial evidence, this Court has
> said, is more than a mere scintilla.  It means—and means only—such
> relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the

judiciary's ability to review decisions by administrative agencies, but it does not

grant courts the right to review the evidence de novo.  *Moruzzi v. Comm'r of Soc.*

*Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . .

. presupposes that there is a zone of choice within which the decisionmakers can go

11

either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must " 'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

## V.    Analysis

Phillips presents two primary arguments on appeal: (1) the ALJ's Step Three determination is faulty and not supported by substantial evidence, and (2) the ALJ

failed to create an accurate RFC and therefore erroneously found work at step four. Each argument will be addressed in turn below.

A.    Step Three

Phillips faults the ALJ for failing to consider listings 1.04A (disorders of the spine) and 11.08B (spinal cord disorders) in her Step Three analysis because she contends that her spinal impairments meet or medically equal the requirements of those listings.

At Step Three, the ALJ considers a claimant's impairments and determines whether an impairment meets or equals a listed impairment or whether the combination of impairments equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  A listed impairment is considered "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).  If a claimant meets or equals the criteria of a listed impairment, she will be found disabled at Step Three. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ found that Phillips' epilepsy, fibromyalgia, and spondylosis of the cervical and lumbar spines were severe impairments.  (ECF No. 9, PageID.92). The only listing that the ALJ considered was 11.02, which relates to seizures.  (*Id*., PageID.93).  However, "neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not

13

meet.' " *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (citations omitted).  Rather, the ALJ must discuss a relevant listing when the record raises a "substantial question," but to do so, a claimant "must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing." *Id*. (citations omitted).  Accordingly, the Court therefore must determine whether the record evidence raises a substantial question as to Phillips' ability to satisfy each requirement of listings 1.04A and 11.08B.

First, however, as the Commissioner notes, Phillips failed to raise the listing argument before the ALJ.  Rather than a listing argument, Phillips relied on a theory that she was disabled under a sedentary grid rule.  (ECF No. 9, PageID.358-360).  The Sixth Circuit has held that a failure to raise a listing argument before the ALJ means the ALJ is not obligated to specifically address that listing in his decision. *Wilson v. Comm'r of Soc. Sec.*, 618 F. App'x 281, 286 (6th Cir. 2015) ("But Wilson's counsel did not mention those particular listings at Wilson's hearing before the ALJ, and Wilson offers no evidence that those listings applied to her.  The ALJ was therefore not obligated to discuss those specific listings."); *see also Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (rejecting the claimant's assertion that the ALJ had to specifically discuss a particular listing where the claimant did not argue that he had a listed impairment at his administrative hearing); *Walker v. Barnhart*, 72 F. App'x 355, 357 (6th Cir.

14

2003) (holding that a claimant who did not assert a disability claim under a specific regulatory listing was "not entitled to an award of benefits under that listing"). Therefore, Phillips' listing argument should be rejected because she failed to raise it before the ALJ.  However, for the sake of completeness, the undersigned will consider below whether Phillips raise a substantial question that her impairment met or equaled either listing.

1.     Listing 1.04A

To meet Listing 1.04A, a claimant must show that she has a disorder of the spine (herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture) resulting in a compromise of the nerve root or the spinal cord and

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

Phillips can establish that she has an impingement of the left C6 and C7 nerve roots (ECF No. 9, PageID.427-4428), which the Commissioner concedes "is likely sufficient to meet the capsule definition of the listing" (ECF No. 12, PageID.602).  However, Phillips fails to show that she meets the Part A criteria set forth above, i.e. evidence of nerve root compression, limitation of motion of the

spine, motor loss (muscle weakness) with sensory or reflex loss, and positive straight leg raising test (sitting and supine).  *Id*.

Phillips points to her diagnosis of radiculopathy, her unsteadiness on her feet, and her prescription for a quad cane as examples of how she meets the Part A criteria.  However, Phillips' diagnosis of radiculopathy alone is not enough to demonstrate a listing is met or equaled.  Further, lack of balance and ineffective ambulation are not Part A criteria.

Moreover, the other evidence that Phillips relies upon does not demonstrate a lack of motor strength, a lack or sensory functions, or a positive straight-leg raising test which is necessary to meet the Part A criteria.  *See Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011) ("To establish the equivalent of nerve-root compression, Bailey must demonstrate a lack of motor strength, a lack of sensory functions, and a positive straight-leg raising test, among other things."); *Lawson v. Comm'r of Sec. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006) (The "strict requirements" of Listing 1.04 "requires a finding of limitation of motion of the spine and loss of motor reflex."); *Burbo v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 526, 550 (E.D. Mich. 2012) (to meet the listing the claimant must demonstrate sensory or reflex deficits).  Instead, the evidence shows that while Phillips complained of back pain there were no spinal findings and she could move all of her extremities.  (ECF No. 9, PageID.369-371).  Further, even though Phillips

16

reported chronic pain and seemed moderately uncomfortable on examination there was no identification of where the pain was located and she only had tenderness in locations other than her back (*Id*., PageID.397), and that Phillips had 4/5 strength in the lower extremities[2] and 5/5 strength in the upper extremities (*Id*., PageID.465).

Furthermore, other record evidence indicate that Phillips had a normal range of motion and strength plus intact sensation.  (*Id*., PageID.367, 375, 416, 452, 456, 489-490, 529, 553).   Where there is some evidence of abnormal findings and other evidence of normal findings, "[t]his mix of observations provides substantial evidence that [the plaintiff]'s impairments did not meet Listing 1.04(A)"). *Harrision v. Comm'r of Soc. Sec.*, No. 18-10374, 2019 WL 4463307, at *8-*9 (E.D. Mich. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4450983 (E.D. Mich. Sept. 17, 2019); *see also* Acquiescence Ruling (AR) 15-1(4), 80 FR 57418-02, 2015 WL 5564523, at *57420 (Sept. 23, 2015) (citing 20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4)) ("[W]hen the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the

---

[2] A strength finding of 4/5 has not been found to meet Listing 1.04A.  *See Wilkinson v. Comm'r of Soc. Sec.*, No. 18-13728, 2019 WL 7838630, at *18 (E.D. Mich. Nov. 14, 2019), *report and recommendation adopted*, 2020 WL 358713 (E.D. Mich. Jan. 22, 2020) (upholding an ALJ's finding that strength scores of "4" did not constitute loss of motor strength as required by Listing 1.04A.)

individual's nerve root compression would not rise to the level of severity required by listing 1.04A.").

Overall, Phillips fails to raise a substantial question that she met or equaled Listing 1.04A.

### 2.    Listing 11.08B

To meet Listing 11.08B, a claimant must show that she has a spinal cord disorder with disorganization of motor function in two extremities, resulting in an extreme limitation in her ability to stand up from a seated position, balance while standing or walking, or use her upper extremities, persisting for three consecutive months after the disorder.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.08B.  The undersigned assumes based on Phillips' assertion of leg weakness that she is claiming a disorder of motor function in her lower extremities.  However, her prescription for a quad cane fails to show an extreme limitation in balancing while standing or walking that lasted three months.  Phillips was prescribed a quad cane on March 11, 2019, and the hearing was held on May 28, 2019.  This is less than a three-month period.  Moreover, Dr. Morson reported on March 12 – one day after the quad cane was prescribed – that Phillips could "ambulate[] independently." (ECF No. 9, PageID.452).

Phillips also says that the ALJ erred in relying on the state agency opinion of Dr. Hagerty that did not find she met Listings 1.04A or 11.08B, pointing out that

18

medical evidence regarding her spinal condition was submitted after Dr. Hagerty's review.  However, Dr. Hagerty did consider records relating to Phillips' ability to walk in assessing her functional capacity, and included exertional and postural limitations.  (*Id*., PageID.128-129).

Overall, Phillips fails to raise a substantial question that she met or equaled Listing 11.08B.

## B.    RFC

Phillips argues that the ALJ erred in crafting the RFC because she failed to include her need for a hand-held assistive device and such a device is incompatible with light work activity.

In determining a claimant's RFC, it is necessary to consider (1) objective medical evidence as well as (2) subjective evidence of pain or disability.  20 C.F.R. §§ 404.1545(a)(1) (RFC must be based on all "relevant evidence").  The "RFC is to be an 'assessment of [a claimant's] remaining capacity for work' once her limitations have been taken into account."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).  In crafting the RFC, the ALJ must consider the restrictions alleged by the claimant.  §§ 404.1545(b-d); 416.945; SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996).  "Although a function-by-function analysis is desirable, SSR 96–8p does not require ALJs to produce such a detailed statement in writing."  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-548, 2002 WL

19

343402, at *5 (6th Cir. March 4, 2002) (internal citations omitted).  "[T]he ALJ

need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-related

activities, and explain the resolution of any inconsistencies in the record."  *Id.*

Here, contrary to Phillips' argument, the RFC for light work with additional

limitations is supported by substantial evidence.  While Phillips was prescribed a

quad cane for walking (ECF No. 9, PageID.529), the necessity of this prescription

is in question based on records postdating the prescription.  As noted above, the

day after the quad cane was prescribed, Phillips' doctor concluded that she could

ambulate independently and her gait was normal.  (*Id.*, PageID.452).  Other record

evidence established that Phillips routinely had a normal gait.  (*Id.*, PageID.376,

409, 415, 452, 455-456, 490).  Because substantial evidence supports the

conclusion that she did not require the use of an assistive device, the ALJ was not

required to include that limitation in the RFC finding or the hypothetical question

to the VE.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235

(6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions

to a vocational expert and is required to incorporate only those limitations accepted

as credible by the finder of fact."); *Underwood v. Comm'r of Soc. Sec.*, No. 12-

12633, 2013 WL 3851002, at *8 (E.D. Mich. July 25, 2013) (noting that the RFC

finding only needs to include limitations found credible).

20

Moreover, even if Phillips did need a hand-held assistive device for ambulation, such a device does not necessarily preclude light work.  *See e.g., Marko v. Comm'r of Soc. Sec.*, No. 2:16-cv-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (collecting cases) ("Case law in this district has found that the use of a cane does not preclude light work.").  Additionally, at the hearing, Phillips failed to question the VE on the issue of how light work was precluded by the use of a hand-held assistive device thereby forfeiting the argument.  *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal.").

Furthermore, Phillips' argument that the RFC should have included limitations regarding her ability to move her neck does not find support in the record.  While Phillips testified that moving her neck was sometimes difficult, nothing in her treatment records supports this claim.

Finally, to the extent that Phillips claims that the ALJ violated SSR 85-15 by not considering the above limitations, her argument should be deemed waived for lack of development.  *See Willingham v. Comm'r of Soc. Sec.*, No. 17-11189, 2018 WL 5305082, at *9 (E.D. Mich. Aug. 22, 2018), *report and recommendation adopted*, 2018 WL 4352701 (E.D. Mich. Sept. 12, 2018).  Here, just as in

*Willingham*, Phillips "does not provide any argument on SSR 85-15 and makes no attempt at developing an argument explaining how the ALJ failed to comply with the ruling." *Id*. Accordingly, the undersigned will not address whether the ALJ violated SSR 85-15. *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted); *see also Marko v. Comm'r of Soc. Sec.*, No. 2:16-cv-12204, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, No. 3:12 CV 2986, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims. This Court does not conduct a de novo review in social security proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's behalf.")).

Overall, the RFC is supported by substantial evidence as is the rest of the ALJ's decision. Accordingly, the ALJ's decision should be affirmed.

### C.    In Sum

Ultimately, the record establishes that Phillips has some impairments, however, substantial evidence nonetheless supports the ALJ's determination that

she was not disabled under the Act. Because the ALJ's determination was within

the "zone of choice" accorded to the fact-finder at the administrative hearing level,

it should not be disturbed by this Court. *Blakley, supra,* 581 F.3d at 406.

## VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the

Commissioner's motion be GRANTED, Phillips' motion be DENIED, and that

under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be

AFFIRMED.

Dated: January 26, 2022                                s/Kimberly G. Altman
Detroit, Michigan                                      KIMBERLY G. ALTMAN
                                                       United States Magistrate Judge


## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation. Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Hum. Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager

24